# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| *STEPHANIE ADAMS*, Administrator of the Estate of James Adams, Deceased, )<br><br>Plaintiff )<br><br>v. )<br><br>*GINA WOHLFORD*, in her individual capacity, and )<br><br>SCHOOL BOARD FOR THE CITY OF NORTON, VIRGINIA. )<br><br>Defendants. ) | Case No. _____ |

## *COMPLAINT*

The Plaintiff Stephanie Adams, ("Ms. Adams"), acting as administrator of the estate of James Adams ("Mr. Adams"), states the following as her Complaint:

1. This is a claim under 42 U.S.C. § 1983 against the Defendants for violating the constitutional rights of Mr. Adams while acting under color of state law. The Defendants violated the Fourteenth Amendment to the United States Constitution by depriving Mr. Adams of his property without Due Process of law.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper pursuant to 28 U.S.C. 1391.

4. Mr. Adams died on May 23, 2022. Ms. Adams was appointed administrator of the estate by order of the Wise County Circuit Court dated June 24, 2022.

5. The Defendant Gina Wohlford ("Ms. Wohlford") is the superintendent of the public school division for the City of Norton, Virginia.

6. The Defendant School Board for the City of Norton, Virginia ("the School Board"), is a body corporate under Va. Code § 22.1-71. Under the Virginia Constitution, Article VIII, section 7, the School Board is charged with the supervision of the public school division for the City of Norton, Virginia.

7. This action is timely. For this claim under 42 U.S.C. § 1983, the federal law borrows Virginia's two-year statute of limitations including its tolling rules. The cause of action arose on February 7, 2020, the date when the School Board terminated Mr. Adams' employment. The statute of limitations was tolled between March 16, 2020, and July 20, 2020, by operation of the emergency orders of the Supreme Court of Virginia related to the pandemic, as interpreted by the Court of Appeals of Virginia in *English v. Quinn*, 76 Va. App. 80, 880 S.E.2d 35 (2022). At the time of Mr. Adams' death, with the tolling, the two-year statute of limitations had not yet run, and Mr. Adams had no action pending related to the causes of action stated in this Complaint. By operation of Va. Code § 8.01-229(b), the statute of limitations was tolled further following Mr. Adams' death for an

2

additional year from the date of the appointment of Ms. Adams as the administrator of Mr. Adams' estate.

8. Mr. Adams was employed as a licensed professional teacher under a continuing contract with the School Board. He was not an at-will employee. He had a property interest in his continued employment, based on the statutes described below.

9. Va. Code § 22.1-303 allows teachers to attain "continuing contract status," after three years of employment as a teacher.

10. Pursuant to Va. Code § 22.1-304, Mr. Adams was "entitled to continuing contracts during good behavior and competent service." His employment while he had continuing contract status was renewed each year automatically up to 2019.

11. Mr. Adams had continuing contract status in his employment as a licensed teacher for more than twenty years, through 2019.

12. Pursuant to Va. Code § 22.1-307, Mr. Adams could be dismissed from his teaching position only for just cause, including "incompetency, immorality, noncompliance with school laws and regulations, disability as shown by competent medical evidence when in compliance with federal law, conviction of a felony or a crime of moral turpitude, or other good and just cause."

13. Pursuant to Va. Code §§ 22.1-309 and 22.1-311, Mr. Adams was entitled to notice of the grounds for a proposed dismissal and a fact-finding hearing, at which witness testimony and other evidence may be presented, and a written decision by the School Board.

14. Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which protects "life, liberty, and property," courts look to state law to define what is "property." Applying Virginia law, every court which has ever considered the question has concluded that teachers with continuing contract status have a property interest in their continued employment for purposes of the Due Process Clause.[1] Because of these substantive and procedural protections for teachers with continuing contract statute, Mr. Adams was not an at-will employee and instead he had a property interest in his continued employment.

---

[1] *See, e.g.*, *Pettis v. Nottoway Cty. Sch. Bd.*, Case No. 3:12-cv-00864, 2013 WL 3063704, at *9 (E.D. Va. June 17, 2013) ("A public school teacher in Virginia who attains a continuing contract maintains a property interest protected by the due process clause."); *Parker v. Albemarle Cty. Pub. Sch.*, Case No. 3:08-cv-00040, 2009 WL 29501, at *3 (W.D. Va. Jan. 5, 2009), *aff'd*, 332 F. App'x 111 (4th Cir. 2009) ("That status provides teachers with a property interest in continued employment."); *Daggy v. Staunton City Sch.*, Case No. 5:04-cv-00023, 2004 WL 2900653, at *2 n.2 (W.D. Va. Dec. 13, 2004), aff'd, 158 F. App'x 487 (4th Cir. 2005) ("Under Virginia law, continuing contract status amounts to a protected property interest."); *Echtenkamp v. Loudon Cty. Pub. Sch.*, 263 F. Supp. 2d 1043, 1054 (E.D. Va. 2003) ("plaintiff has established a protected property interest in her continued employment"); *Thurston v. Roanoke City Sch. Bd.*, 26 F. Supp. 2d 882, 885 (W.D. Va. 1998) ("A public school teacher in Virginia who has attained continuing contract status has a property interest protected by the due process clause.").

15. In 2016, the principal of J.I. Burton High School located in the City of Norton, Aaron Williams, investigated how Mr. Adams addressed female students at the high school, and issued a report. His investigation included the complaints of students named Kacie Culbertson, Regan Phipps, Tori Fields, and Matthew Marcum, all since graduated.

16. In the version of Mr. Williams' report that was subsequently produced to Mr. Adams, Mr. Williams concluded that "I recommend to the Board that Coach Adams be placed immediately on an improvement plan," which was done, with the approval of the superintendent of that time, Dr. Keith Perrigan.

17. In December 2016, Mr. Williams wrote about Mr. Adams that the performance deficiencies had been successfully corrected.

18. Dr. Perrigan left the Norton school division in 2017.

19. In 2017, someone brought an anonymous complaint against Mr. Adams with the State Board.

20. By letter dated June 5, 2017, Steven R. Staples wrote to the new superintendent, Ms. Wohlford, describing the complaint.

21. The anonymous complaint referenced Mr. Williams' investigation, and his report, and the improvement plan, and concluded that all of these details needed to be made public.

5

22. Ms. Wohlford wrote back to the State Board on June 20, 2017, that she had no information about misconduct or complaints involving Mr. Adams since the date of the improvement plan in 2016.

23. Mr. Staples wrote back to Ms. Wohlford by letter dated June 30, 2017, indicating that her letter was insufficient, and it was her responsibility pursuant to Va. Code § 22.1-298.1(B) to conduct "an immediate and thorough investigation," and so she did.

24. In connection with this investigation, Mr. Williams made the statement that "since the plan of improvement, he had no complaints from students, female students, parents, teachers, or administrators alleging sexual harassment by Mr. Adams."

25. Ms. Wohlford wrote back to Mr. Staples on August 30, 2017, explained that she had investigated whether Mr. Adams had harassed or continued to harass female students and concluded that there was nothing since the improvement plan.

26. In 2018, a complaint was brought against Mr. Adams with the Department of Social Services. After an investigation, the Department of Social Services determined the complaint to be unfounded. The Department notified Mr. Adams of this determination by letter dated June 15, 2018.

27. One of the female students interviewed in connection with the 2018 investigation by the Department of Social Services was Taylor Collins. She said so in an article that was published in the Kingsport Times News in July 2019.

28. The newspaper reported that Ms. Collins "confirmed she was one of the female students referenced in a 2018 Norton Police and Social Services investigation of Adams for allegations of sexual harassment and hitting one student on the rear with a rolled-up piece of paper."

29. Ms. Collins graduated in 2018. She had Mr. Adams as a classroom teacher in 2014-2015.

30. Another of the female students interviewed in connection with the 2018 investigation was Cassie Isom. Ms. Isom graduated in 2019. She had Mr. Adams in class during her freshman year, 2015-2016.

31. On June 5, 2019, Ms. Wohlford made a written recommendation to the School Board that Mr. Adams' coaching contract should not be renewed, because the "leadership committee" felt that the football program after the previous year's district championship needed to go "in a new direction."

32. The School Board gave notice that it would consider Ms. Wohlford's recommendation at a special meeting on June 10, 2019.

33. At the special meeting, Ms. Collins and another former student named Makenna Kennedy appeared and spoke out against Mr. Adams.

7

34.  Ms. Collins prepared a written statement to be read at the meeting, in which she stated that Mr. Adams touched her bottom with his hand. She later recanted this statement. In the article published in the Kingsport Times-News and in her subsequent interview with Mr. Longo, Ms. Collins clarified that instead he touched her with a piece of paper.

35.  Notwithstanding Ms. Collins' statements, the School Board overruled the Superintendent's recommendation and voted 5-0 to renew Mr. Adams' contract as the head football coach at the meeting on June 10.

36.  On June 11, 2019, her brother posted an online petition against Mr. Adams, claiming that Ms. Collins "was groped inappropriately by a history teacher at John I. Burton high school in Norton, Virginia, during her freshman year," referring to Mr. Adams. The petition on change.org was signed by more than 4,000 individuals, most of them from outside the Norton area.

37.  On June 21, 2019, the School Board voted to hire an investigator. The investigator hired for the investigation was Timothy Longo.

38.  Mr. Longo interviewed Ms. Collins on or about June 26, 2019.

39.  She told Mr. Longo that she spoke against Mr. Adams because she felt like her story had been swept under the rug so many times.

40.  She told Mr. Longo that her statement made to the School Board and others, that Mr. Adams touched her bottom with his hand, was not true.

8

41. Instead, Ms. Collins explained in her interview with Mr. Longo, "it was actually brought to my attention that it was a rolled up piece of paper" and not a hand, and so she acknowledged that she "definitely felt bad about saying that" it was Mr. Adams' hand.

42. Ms. Wohlford notified Mr. Adams on June 26, 2019, that his employment as teacher and coach would be suspended pursuant to Va. Code § 22.1-315 for the investigation of additional complaints against him that surfaced after the Board's vote on his coaching position.

43. In this letter, Ms. Wohlford referenced specifically the statements made by Ms. Collins and Ms. Kennedy as part of the basis for the suspension, even though Mr. Adams' conduct of which they complained was from before the fall of 2016.

44. Also in this letter, Ms. Wohlford referenced as part of the basis for the suspension the efforts of FCSS: "Administration has received a report from a community advocacy center executive director that numerous students and parents have contacted the center to complain about alleged sexual harassment by you and the executive director reports she anticipates that some of those students will file formal complaints with the division alleging sexual harassment by you."

45. Notwithstanding this statement by Ms. Wohlford in her suspension letter, there were no such formal complaints filed by persons in contact with FCSS,

9

other than the same individuals who were part of Mr. Williams' investigation or complaining about Mr. Adams' conduct from the same time period.

46. Also in this letter, Ms. Wohlford referred to a pending investigation before the State Police. The investigation ended in 2020 with no charges.

47. Mr. Adams filed an appeal of his suspension by Ms. Wohlford to the School Board.

48. On July 21, 2019, the School Board affirmed Ms. Wohlford's decision, even though it had not been presented with any evidence of Mr. Adams' conduct from after the fall of 2016.

49. Besides Ms. Collins, Ms. Culbertson, Ms. Phipps, Ms. Fields, Mr. Marcum, and Ms. Isom, Mr. Longo interviewed Naomi Torres, whose complaint against Mr. Adams was from 2016. He also interviewed Paloma Barongan and Alex Carroll, who both graduated in 2019 and had Mr. Adams in class as a freshman in 2015-2016.

50. The investigator, Mr. Longo, recommended that Mr. Adams be fired, based on matters that were addressed in the improvement plan in 2016. The new witnesses and new complaints never materialized in the way that Ms. Wohlford had reported to the School Board that they would. Mr. Longo was indifferent to the fact that Mr. Adams had already been punished for the conduct described by Ms. Collins, Ms. Culbertson, Ms. Phipps, Ms. Fields, Mr. Marcum, Ms. Isom, Ms.

Torres, Ms. Barongan, and Ms. Carroll. Mr. Longo was indifferent to whether Mr. Adams' improvement plan made improvements.

51. Based on Mr. Longo's recommendation, Ms. Wohlford recommended the termination of Mr. Adams' employment, citing the complaints of Ms. Collins and others whose complaints about Mr. Adams arose before the date of the improvement plan. The School Board adopted her recommendation.

52. The Board voted to terminate Mr. Adams' employment on February 7, 2020.

53. Because Mr. Adams had previously been disciplined in 2016, and the discipline was effective, as Ms. Wohlford represented more than once to the State Board of Education, there was no cause for him to be disciplined a second time for the same conduct, and his termination had the effect of depriving him of his property without Due Process of law.

54. The violation of Mr. Adams' constitutional rights, described above, injured Mr. Adams, and caused him to suffer compensable damages, including emotional distress, harm to his reputation, lost wages, and attorney fees.

Count 1: Liability of Ms. Wohlford

55. Ms. Wohlford was at all times a person acting under color of state law.

56. Mr. Adams' employment would not have been investigated, suspended, and terminated in 2019-2020, but for the wrongful actions of Ms. Wohlford in violating his constitutional rights.

57. Ms. Wohlford had actual knowledge that the conduct for which she recommended to the School Board that Mr. Adams be investigated and later suspended and then terminated was the same conduct for which he was given the improvement plan back during the fall of 2016.

58. Ms. Wohlford conducted multiple investigations after the fall of 2016 and concluded that there were no other complaints about Mr. Adams after the fall of 2016 and reported this conclusion twice to the State Board.

59. Along with Mr. Longo, Ms. Wohlford was also indifferent to the fact that Mr. Adams had already been punished for the conduct described by Ms. Collins, Ms. Culbertson, Ms. Phipps, Ms. Fields, Mr. Marcum, Ms. Isom, Ms. Torres, Ms. Barongan, and Ms. Carroll, and the fact that Mr. Adams' improvement plan made improvements.

60. Ms. Wohlford knew at the time when she made each of her recommendations to the School Board about Mr. Adams that Mr. Adams had already been punished for the conduct that was the basis for Mr. Longo's recommendations, and that thereafter Mr. Adams had changed his ways so far as she knew as shown by the absence of subsequent complaints, but nevertheless she

recommended that he be investigated, suspended, and terminated as further punishment for his conduct that occurred before the fall of 2016.

61. By these recommendations, Ms. Wohlford caused the rights of Mr. Adams to be violated, and caused Mr. Adams to suffer compensable damages, including emotional distress, harm to his reputation, lost wages, and attorney fees.

Count 2: Liability of the School Board

62. In accordance with Virginia law, the School Board was the ultimate policymaker and final decision maker for the school division. Their formal votes determined the custom, policy, and practice for the school division.

63. The School Board knew or should have known Mr. Adams had already been punished for the conduct that was the basis for their decisions to investigate, suspend, and terminate his employment.

64. By voting to investigate, suspend, and terminate the employment of Mr. Adams, based on conduct for which he had already been punished, the School Board violated Mr. Adams' constitutional rights.

65. By these actions, the School Board caused Mr. Adams to suffer compensable damages, including emotional distress, harm to his reputation, lost wages, and attorney fees.

Based on the foregoing, Ms. Adams as the administrator of Mr. Adams' estate seeks the following relief:

13

A. Judgment against the Defendants for compensatory damages;

B. Judgment against Ms. Wohlford sued in her individual capacities for punitive damages;

C. An award of attorneys' fees pursuant to 42 U.S.C. § 1988.

D. Such other and further relief as Ms. Adams may be entitled to receive.

A jury is demanded on all issues subject to trial by jury.

> STEPHANIE ADAMS, as
>
> Administrator of the Estate of James
>
> Adams, Plaintiff
>
> By: s/ Steven R. Minor
>       Counsel

Counsel:

Steven R. Minor, No. 30496
Elliott Lawson & Minor, P.C.
230 Piedmont Ave., Suite 300
Bristol, VA 24201
Tel: (276) 466-8400
Fax: (276) 466-8161
Email: sminor@elliottlawson.com.